UNITED STATES of America, et al., Plaintiffs,

v.

MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, et al., Defendants.

and Related Claims.

No. CV 90–3122 AAH(JRx).

United States District Court, C.D. California.

Oct. 19, 1993.

Gerald F. George, Helen Kang, Environment Enforcement Section, Environment and Natural Resources Div., U.S. Dept. of Justice, San Francisco, CA, Adam M. Kushner, Robert Oakley, Sharon Zamore, Environment Enforcement Section, Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, Kathe Pease, Lee Graves, NOAA Office of General Counsel, Southwest Regional Office, Long Beach, CA, for U.S.

Karl S. Lytz, Kim McCormick, Latham & Watkins, San Diego, CA, for Montrose Chemical Corp. of California.

John A. Saurenman, Deputy Atty. Gen., Los Angeles, CA, for State of Cal.

Jose R. Allen, Peter Simshauser, Skadden, Arps, Slate, Meagher & Flom, San Francisco, CA, for Chris–Craft Industries, Inc.

Paul B. Galvani, Roscoe Trimmier, Ropes & Gray, Boston, MA, for Rhone–Poulenc Basic Chemicals Co. and ICI American Holdings, Inc.

David Rosenberg–Wohl, Charles B. Cohler, Scott P. DeVries, Lasky, Haas, Cohler & Munter, San Francisco, CA, for Westinghouse Elec. Co.

## COURT'S OPINION AND ORDERS ON REVIEW OF SPECIAL MASTER'S RULINGS:

HAUK, Senior District Judge.

### BACKGROUND

In 1991, the United States and the State of California ("Plaintiffs") filed a Second

Amended Complaint against ten named defendants,[1] pursuant to section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). 42 U.S.C. § 9607(a). Plaintiffs allege that the corporate defendants[2] released hazardous substances such as DDT and PCBs from their plants into the San Pedro Channel by dumping waste and discharge into the ocean via the Los Angeles County Sanitation District ("LACSD") wastewater treatment system.

Plaintiffs' action arising from the corporate defendants' alleged pollution involves two claims. The first claim is for recovery of natural resource damages and associated response and damage assessment costs. Plaintiffs brought this claim jointly and severally against all ten defendants under section 107(a)(4)(C) of CERCLA. The second claim is for cost recovery of approximately $1.8 million that the United States incurred in cleaning up pollution at the Montrose DDT plant site. The United States alone brought the second claim against the owners and operators of the Montrose DDT plant site.[3]

On March 18, 1991, this Court issued an Order referring this case to Special Master Harry V. Peetris for discovery and pretrial matters. PreTrial Order No. 1 and Reference to Special Master to Supervise and Superintend Discovery and all PreTrial Matters ("PreTrial Order No. 1"). In addition, this Court has entered two consent decrees removing from this action Potlach, Simpson Paper Company, District No. 2, and 150 third-party defendant local governmental entities. See Potlach Settlement dated May 19, 1992 and Order Granting Plaintiffs' Motion for Entry of Second Consent Decree dated April 26, 1993. At this time, the Special Master is supervising all discovery and pretrial matters as Plaintiffs' proceed with their action against the remaining defendants.[4]

In February 1993, Westinghouse brought the following motions before this Court:

1. Westinghouse Electric Corporation's Motion for an Order Precluding any Recovery for Any Injury or Damage Alleged to Have Occurred within the Three Mile Limit ("Westinghouse's Three Mile Limit Motion");

2. Westinghouse Electric Corporation's Motion to Dismiss the Second Amended Complaint with Prejudice under Rule 11 of the Federal Rules of Civil Procedure ("Westinghouse's Rule 11 Motion"); and

3. Westinghouse Electric Corporation's Motion Either for an Order Requiring Plaintiffs to Comply with Their Own Regulations or for an Order Disposing of Plaintiffs' Attempt to Rely at Trial Upon a Presumption that Requires Compliance with Those Very Regulations ("Westinghouse's Regulations Motion").

This Court refused to hear all three of Westinghouse's motions by order dated March 16, 1993, finding that each motion was a pretrial matter and not dispositive within the meaning of PreTrial Order No. 1. Accordingly, the Court transferred the motions to Special Master Peetris who, after reviewing the briefs and holding a hearing, denied each of Westinghouse's motions in a Memo-

---

1. Plaintiffs named ten original defendants in their Second Amended Complaint, filed August 6, 1991. The original defendants were (1) Montrose Chemical Corporation of California ("Montrose"); (2) Rhone–Poulenc Basic Chemicals Company ("Rhone–Poulenc"); (3) Atkemix Thirty–Seven, Inc. ("Atkemix"); (4) Stauffer Management Company ("Stauffer"); (5) ICI American Holdings, Inc. ("ICI"); (6) Chris–Craft Industries, Inc. ("Chris–Craft"); (7) Westinghouse Electric Corporation ("Westinghouse"); (8) Potlatch Corporation ("Potlatch"); (9) Simpson Paper Company; and (10) County Sanitation District No. 2 of Los Angeles County ("District No. 2").

2. The original corporate defendants included Montrose, Rhone–Poulenc, Chris–Craft, ICI, At-

kemix, Stauffer, Westinghouse, Potlatch, and Simpson Paper Company.

3. The defendants to the second claim are Montrose, Chris–Craft, Rhone–Poulenc, ICI, and ICI's two wholly owned subsidiaries, Stauffer and Atkemix.

4. The remaining defendants are Montrose, Rhone–Poulenc, Atkemix, Stauffer, ICI, Chris–Craft (collectively, the "DDT Defendants"), and Westinghouse.

Defendant ICI recently changed its name to Zeneca Holdings, Inc. ("Zeneca"). In addition, Rhone–Poulenc Basic Chemicals, Co. is now a division of Rhone–Poulenc, Inc..

randum of Decision issued July 23, 1993 ("Memorandum of Decision").

In response to the Special Master's rulings, on August 13, 1993, Westinghouse filed Objections to the Special Master's Recommendations,[5] asking this Court to grant *de novo* review of its Three Mile Limit Motion, Rule 11 Motion, and Regulations Motion.[6]

In February 1993, the DDT Defendants filed with this Court a motion *in limine* seeking an order precluding Plaintiffs from recovering pre–1980 damages and limiting damage recovery from the DDT Defendants to $50 million. The Court directed this motion to the Special Master for the same reasons it similarly directed Westinghouse's Three Mile Limit Motion, Rule 11 Motion, and Regulations Motion, as already discussed above. After extensive briefing and argument, the Special Master denied the DDT Defendants' motion without prejudice in his Memorandum of Decision.

In response, the DDT Defendants asked this Court for *de novo* review of the DDT Defendants' Motion for Review of Special Master's Memorandum Addressing Defendants' Motion to (1) Preclude Recovery of pre–1980 Damages and (2) Limit Recovery from One Facility to $50 Million ("DDT Defendants' Motion for Review").

### 1. SPECIAL MASTER'S RULING RE: COMPELLING ADMISSIONS

Review Requested by Westinghouse

#### A. Special Master's Ruling

On April 8, 1993, Special Master Peetris granted Plaintiffs' motion to compel Westinghouse to further respond to Plaintiffs' first set of requests for admissions and second request for production of documents. Order Granting, in Part, Plaintiffs' Motion to Compel Defendant Westinghouse Electric Corpo-

ration to Respond to Plaintiffs' Requests for Admissions and to Complete Production of Documents in Response to Plaintiffs' Second Requests for Production of Documents (dated April 15, 1993) ("Order Granting Plaintiffs' Motion to Compel"). In particular, Special Master Peetris ordered Westinghouse to serve amended responses to Plaintiffs' requests for admissions within thirty days.

Although Westinghouse believed Special Master Peetris' ruling was without legal basis, Westinghouse served amended responses to Plaintiffs' requests for admissions. Westinghouse Electric Corporation's Reply Memorandum in Support of its Application for Review of a Portion of a Ruling by the Special Master (Westinghouse's "Reply in Support of its Application for Review") at p. 2. In addition, on May 27, 1993, Westinghouse filed a Notice of Application for Review of a Portion of a Ruling by the Special Master ("Notice of Application"), which requests that this Court review the portion of the Order Granting Plaintiffs' Motion to Compel ordering Westinghouse to further respond to Plaintiffs' request for admissions.

#### B. Westinghouse's Arguments

PreTrial Order No. 1 provides that any written ruling made by the Special Master in discovery matters shall be subject to review by this Court upon application by a party, as long as the party makes such application, at the latest, within ten days after the Special Master issues the written ruling. PreTrial Order No. 1 at p. 13. On May 17, 1993, Plaintiffs served Westinghouse with a Notice of Entry of the Special Master's Order Granting Plaintiffs' Motion to Compel. Westinghouse filed its Notice of Application ten days later on May 27, 1993. Therefore, Westinghouse's filing of its application for review by this Court of the Order Granting Plaintiffs' Motion to Compel constructively

---

**5.** The title of Westinghouse's motion is a misnomer, because the Special Master filed a Memorandum of Decision, *not* a Report and Recommendation, regarding Westinghouse's Three Mile Limit Motion, Rule 11 Motion, and Regulation Motion.

**6.** While this Court must make a *de novo* determination of any portion of the Special Master's report to which a specific objection is made, the

Court, in exercising its judicial discretion, is permitted to place whatever reliance it chooses on a special master's findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424; *see also, U.S. v. Yee*, 134 F.R.D. 161, 163 (N.D.Ohio 1991); *Medwid v. Baker*, 752 F.Supp. 125, 131 (S.D.N.Y. 1990).

falls within the ten-day window contemplated in Pretrial Order No. 1.

Westinghouse candidly admits that it filed its Notice of Application at this time "solely in order to preserve its right of review by this Court." Notice of Application at p. 2. Westinghouse states it intends to comply with Special Master Peetris' Order Granting Plaintiffs' Motion to Compel and has in fact already served amended responses to Plaintiffs' request for admissions. Westinghouse worries, however, that sometime in the future Plaintiffs will "press the matter further" and/or Special Master Peetris will interpret his order "more broadly." *Id.* In the event that this occurs, Westinghouse believes, it will have "preserved its right of review to this Court of the proposition that the Order is in Error," by virtue of having filed its Notice of Application within ten days after receiving Plaintiffs' Notice of Entry of the Order Granting Plaintiffs' Motion to Compel. *Id.*

In accordance with its request for review based on events that could occur in the future, Westinghouse now asks the Court to continue the hearing on its application currently set for Monday, October 18th, until Monday, December 6th. Westinghouse's Reply in Support of its Application for Review at p. 1. When Westinghouse asked Plaintiffs to agree to continue the hearing date, Plaintiffs refused. *Id.* at 3. Westinghouse argues that it makes sense to continue the hearing, because Plaintiffs have not yet determined whether to challenge Westinghouse's second amended responses to Plaintiffs' request for admissions. *Id.* at 3. Continuing the hearing date, Westinghouse reasons, would allow Plaintiffs time to decide whether or not to challenge Westinghouse's responses.

### C. Plaintiffs' Arguments

Plaintiffs urge this Court to deny Westinghouse's Application for Review in its entirety. Plaintiffs argue that, as a procedural matter, Westinghouse's Notice of Application is not properly before the Court, because the Application raises no issue or dispute currently ripe for resolution. Plaintiffs' Memorandum

in Opposition to Defendant Westinghouse Electric Corporation's Notice of Application for Review of a Portion of a Ruling by the Special Master ("Plaintiffs' Opposition to Westinghouse's Notice of Application") at p. 2. Plaintiffs insist that under PreTrial Order No. 1, "Westinghouse had [only] two courses of action with respect to the decision of the Special Master—Westinghouse could have complied with the Order of the Special Master and amended its responses to plaintiffs' discovery consistent with that order, or it could have appealed the order of the Special Master to this Court seeking to have the order modified or reversed." *Id.* at 1.

### COURT'S ORDER

Based on the foregoing, the Court hereby ORDERS:

In the event that Plaintiffs object to Westinghouse's amended admissions and the Special Master issues a ruling ordering further admissions, this Court will consider Westinghouse's request for review of any such ruling, and sets the hearing on December 6, 1993 or any such date upon which counsel stipulate or agree.

### 2. SPECIAL MASTER'S REFUSAL TO EXCLUDE DAMAGES WITHIN THREE MILE LIMIT

Review Requested by Westinghouse

#### A. Special Master's Ruling

Westinghouse filed its Three Mile Limit Motion in the form of a motion *in limine*.[7] The Special Master found the motion to be procedurally improper, because it did not constitute an evidentiary motion "to exclude anticipated prejudicial evidence before the evidence is actually offered." Memorandum of Decision at 14 and 29 (citing *Luce v. United States*, 469 U.S. 38, 41 n. 2, 105 S.Ct. 460, 463 n. 2, 83 L.Ed.2d 443 (1984)). In addition, Special Master Peetris found the motion procedurally defective in that discovery in this case was (and is) still in progress. *Id.* at 15.

---

**7.** Westinghouse first brought this motion before this Court on March 18, 1991 in the form of a motion for judgement on the pleadings, which this Court denied. In January 1993, Westinghouse refiled the motion by simply attaching the parties' 1991 submissions.

After denying the motion without prejudice on procedural grounds, Special Master Peetris went on to find the motion failed on the merits. The Special Master agreed with Plaintiffs that Congress, while giving the states title to the offshore lands by enacting the Submerged Lands Act ("SLA"),[8] reserved Congress' ability to act with respect to those lands pursuant to its Commerce Clause powers. Special Master Peetris concluded that the motion should be denied, because "Congress has reserved its power to act under its commerce authority and did so act in the passage of Section 107(f)(1) of CERCLA, 42 U.S.C. § 9607(f)(1)." Memorandum of Decision at p. 31.

### B. Westinghouse's Arguments

■ Westinghouse makes its motion on the ground that Plaintiffs cannot recover damages for injuries to natural resources found within three miles of shore (the "three mile limit") in view of the SLA. Under the SLA, Congress declared that the States owned the lands beneath the navigable waters, which were within the boundaries of the respective States as well as the natural resources within those boundaries. 43 U.S.C. § 1311; see also 43 U.S.C. § 1314. On this basis, Westinghouse contends that the United States cannot sue for damages to natural resources within the three mile limit and that Congress is powerless to authorize the federal government to recover damages for injuries to natural resources owned by the States.

### C. Plaintiffs' Arguments

Plaintiffs, of course, support Special Master Peetris' ruling denying Westinghouse's Three Mile Limit Motion. They argue that the SLA constitutes no bar to this action, because Congress has used its Commerce Clause to enact several statutes, including CERCLA, that affect areas within the three mile limit. Plaintiffs' Memorandum in Opposition to Defendant Westinghouse Electric Corporation's Objections to Special Master's Recommendations ("Plaintiffs' Opposition to Westinghouse's Objections") at p. 9. Finally, Plaintiffs point out that Westinghouse has

**8.** 43 U.S.C. §§ 1301, et seq.

provided this Court with no authorities contrary to the Special Master's ruling. *Id.*

### COURT'S ORDER

Based on the foregoing, the Court hereby **ORDERS:**

The Special Master's denial of Westinghouse's Three Mile Limit Motion is **UPHELD** solely on the procedural grounds stated in the Special Master's Memorandum of Decision at pages 28–29.

### 3. SPECIAL MASTER'S REFUSAL TO IMPOSE RULE 11 SANCTIONS BY DISMISSING WESTINGHOUSE FROM COUNT I OF THE SECOND AMENDED COMPLAINT

Review Requested by Westinghouse

### A. Special Master's Ruling

Special Master Peetris found two fatal procedural defects in Westinghouse's Rule 11 Motion. First, the Special Master considered the motion untimely, because in general sanctions for pleadings under Rule 11 are only considered at the conclusion of litigation. Second, the Special Master felt that the proper motion to bring was not a Rule 11 motion, but a Rule 12(b)(6) motion to dismiss or a Rule 56 summary judgment motion. Memorandum of Decision at pp. 24, 25.

Proceeding to the motion's merits, Special Master Peetris found that Westinghouse failed to establish that Plaintiffs' claim, (specifically, Count 1 of Plaintiffs' Second Amended Complaint) was both baseless and made without a reasonable and competent inquiry. Memorandum of Decision at p. 25.

### B. Westinghouse's Arguments

■ Westinghouse maintains that Plaintiffs had insufficient information to have named Westinghouse in Count I of the Second Amended Complaint, and seeks dismissal of the complaint with prejudice, as a Rule 11 sanction.

Westinghouse claims that Plaintiffs brought their case against Westinghouse before they knew whether there was a causal connection between Westinghouse's release

540

of PCBs and the injuries to natural resources on which Plaintiffs' claim is predicated. Plaintiffs brought their claim prematurely, Westinghouse asserts, out of concern about the statute of limitations under section 113(g)(1) of CERCLA, 42 U.S.C. § 9613(g)(1).[9]

### C. Plaintiffs' Arguments

Plaintiffs correctly point out that Westinghouse fails to address the procedural and substantive flaws identified by Special Master Peetris in the Rule 11 Motion. Plaintiffs defend against Westinghouse's allegation that Plaintiffs filed their suit without investigation by citing a preliminary investigation of the releases of hazardous substances and resulting loss to resources, documented in a Preassessment Screen Determination ("PSD") prepared by the National Oceanic and Atmospheric Administration ("NOAA") in July 1989. Plaintiffs' Opposition to Westinghouse's Objections at p. 12. In addition to the PSD, Plaintiffs relied on further information sought directly from the Defendants by the Trustees, compiled in a Damage Assessment Plan in February 1990. *Id.* at 13.

### COURT'S ORDER

Based on the foregoing, the Court hereby ORDERS:

The Special Master's denial of Westinghouse's Rule 11 Sanction for Dismissal with Prejudice is UPHELD.

### 4. *SPECIAL MASTER'S FINDING THAT PLAINTIFFS HAVE COMPLIED WITH THEIR OWN REGULATIONS*

Review Requested by Westinghouse (joined by DDT Defendants, Montrose *et al.*)

### A. Special Master's Ruling

The Special Master interpreted Westinghouse's Regulations Motion to be a three-pronged motion. First, in the Special Master's opinion, the Regulations Motion sought an order compelling Plaintiffs to comply with the Department of Interior ("DOI") Damage Assessment Regulations that require all data be provided to Defendants at the time of collection. Second, the motion sought an order precluding Plaintiffs from relying upon a rebuttable presumption to which Plaintiffs would be entitled if they complied with the DOI Regulations for natural resource damage assessments. Third, Westinghouse attempted to reserve the right to challenge the constitutionality of the rebuttable presumption. Memorandum of Decision at p. 26.

The Special Master agreed with Plaintiffs that the Regulations Motion was premature, because the damage assessment under the DOI Regulations has not been completed, and Plaintiffs have not yet elected to avail themselves of the rebuttable presumption. *Id.* The Special Master also noted that this issue had previously been raised and ruled upon by the Special Master earlier during discovery. Special Master Peetris addressed the problem at that time (June 26, 1992) by issuing his Order Re: Discovery Coordination and Service List ("Master's Order Re: Discovery Coordination").

### B. Westinghouse's Arguments

■ Westinghouse seeks an order requiring that Plaintiffs either comply fully with the natural resource damages regulations under which Plaintiffs bring their action, or else forego the rebuttable presumption to which a damage assessment arguably may be entitled. Specifically, Westinghouse seeks to compel compliance with the regulation found at 43 C.F.R. §§ 11.31(a)(4), which provides:

"The Assessment Plan shall contain procedures and schedules for sharing data, split samples, and results of analyses, when requested, with any identified potentially responsible parties and other natural resource trustees."

Westinghouse maintains that Plaintiffs have violated Section 11.31(a)(4) by refusing to share any such data and information, and by refusing to take a position on whether Plaintiffs will eventually seek the benefit of the statutory rebuttable presumption.

With regard to Plaintiffs' refusal to take a position on whether they will seek to impose the rebuttable presumption, this Court

---

**9.** The statute of limitations issue is currently pending before the Special Master whose Report and Recommendation is expected to come before this Court shortly.

agrees with Westinghouse that Plaintiffs should not be allowed, at the eve of trial, to spring on the Defendants Plaintiffs' decision to avail themselves of the presumption on the eve of trial.

### C. Plaintiff's Arguments

Plaintiffs argue that the issue in Westinghouse's Regulation motion is one that may never arise in this case, because the Trustees have not yet determined whether they will seek the rebuttable presumption. Further, Plaintiffs argue, should the Trustees elect to do so, the applicability of CERCLA's rebuttable presumption for damage assessments conducted in compliance with the DOI regulations, would involve the submission of a formal Report of Assessment to this Court. Plaintiffs' Opposition to Westinghouse's Objections at p. 15.

Plaintiffs also charge that Westinghouse completely misreads the requirements of the DOI regulations. Even assuming that Westinghouse is correct that those regulations require the sharing of information, however, Plaintiffs persuade the Court that the Master's Order Re: Discovery Coordination provides for full compliance with any requirements of the DOI regulation. In other words the Special Master has already provided a means for Plaintiffs to share with the Defendants the information which Plaintiffs develop before trial. *See* Plaintiffs' Opposition to Westinghouse's Objections at p. 16.

### COURT'S ORDER

Based on the foregoing, the Special Master's denial of Westinghouse's Regulations Motion is **UPHELD.**

### 5. *SPECIAL MASTER'S REFUSAL TO EXCLUDE PRE–1980 DAMAGES*

Review Requested by DDT Defendants (Montrose, *et al.*)

### A. Special Master's Ruling

 The Special Master found the DDT Defendants' motion *in limine* to be improper

(1) because it was not aimed at excluding prejudicial evidence at trial; (2) because an *in limine* motion should be used to narrow or fix the issues which had been definitely set for trial and should not be used to determine the issues which are to be tried; and (3) because discovery in this case is still in process. Memorandum of Decision at pp. 14–15.

On the merits, the Special Master ruled that the plain language of Section 107(f)(1) bars recovery only when both the releases that caused the damages and the accrual of damages ended before CERCLA's enactment in 1980.[10] Memorandum of Decision at p. 17. In other words, the Special Master found that Section 107(f) limits recovery of damages only where the release and the resulting damages both occur "wholly before" December 11, 1980, the effective date of CERCLA.

### B. DDT Defendants' Arguments

The DDT Defendants argue for an interpretation of Section 107(f) to mean that no recovery of damages is permitted unless both the release and damages occur *wholly after* December 11, 1980. The importance of this distinction lies in the DDT Defendants' assertion that Plaintiffs' core allegations concern events that occurred long before CERCLA's enactment in 1980. Memorandum in Support of DDT Defendants' Motion (1) to Preclude Recovery of Pre–1980 Damages and (2) to Limit Recovery from one Facility to $50 Million ("DDT Defendants' Memorandum") at p. 12.

The DDT Defendants contend that the Special Master incorrectly found that CERCLA permits "retroactive" recovery for damages the DDT Defendants allegedly caused by pre-enactment releases. Specifically, the DDT Defendants object to the Special Master's "wholesale incorporation" of Plaintiffs' position opposing the DDT Defendants' interpretation of Section 107(f). DDT Defendants' Memorandum at p. 14. Further, the DDT Defendants question the Special Master's finding that the plain language of Section 107(f) is clear. Accordingly, they urge

---

10. CERCLA Section 107(f)(1) provides:
 "There shall be no recovery under the authority ... of this section where such damages and the release of a hazardous substance from 835 F.Supp.--14

which such damages resulted have occurred *wholly before* December 11, 1980." (emphasis added).

this Court to examine the legislative history, which they assert shows that Congress intended claims for monetary damages for injured natural resources to be strictly prospective, without exception.

### C. Plaintiffs' Arguments

In accordance with the Special Master's ruling, Plaintiffs maintain that the damages they allege are not barred by operation of Section 107(f)(1), because Plaintiffs have not alleged that the releases and damages both occurred wholly before 1980. Regarding the proper interpretation of Section 107(f), Plaintiffs cite the Ninth Circuit, who has interpreted Section 107(f)(1) to mean pre-enactment releases and injuries are actionable in their entirety if damages stemming from those releases and injuries occur after 1980 or begin pre–1980 but continue post–1980 and are indivisible. *Aetna Cas. and Sur. Co., Inc. v. Pintlar Corp.*, 948 F.2d 1507, 1515 (9th Cir.1991).

### COURT'S ORDER

Based on the foregoing, the Court hereby **HOLDS**:

The Special Master's denial of the DDT Defendants' Request to Preclude Recovery of Pre–1980 Damages is **UPHELD**.

### 6. *SPECIAL MASTER'S REFUSAL TO APPLY $50 MILLION DAMAGES CAP*

Review Requested by DDT Defendants (Montrose, *et al.*)

### A. Special Master's Ruling

■ CERCLA provides for a limit of $50 million for claims for natural resource damages, absent willful misconduct or negligence. That limit expressly applies to *"each release or incident involving release"* of hazardous substances. 42 U.S.C. § 9607(c)(1).

With regard to the DDT Defendants' motion to apply the $50 Million cap to this case, the Special Master held that "it strains all reason ... to find that Congress intended, by the language of [CERCLA], to place a limit of $50 million upon a manufacturing plant from which releases emanated over a fifty year period by construing the releases to be one 'incident.'" Memorandum of Decision at pp. 20–21. Special Master Peetris reached this determination using the meanings accorded the terms "release" and "facility" in CERCLA, as well as the ordinary meaning of the word "incident", including dictionary definitions.

### B. DDT Defendants' Arguments

The DDT Defendants argue that releases at the Montrose facility over a fifty year period constitute a single release, as being a part of an "incident." at one "facility" under CERCLA's language. DDT Defendants' Memorandum at pp. 26, 27. The DDT being a part of an "incident" at one "facility" under CERCLA's language. DDT Defendants' Memorandum at pp. 26, 27. The DDT Defendants urge this Court to interpret the term "facility" to mean the Montrose manufacturing plant and all the contamination emanating therefrom from over fifty years to be a "single" incident. Finally, the DDT Defendants argue that they are not "accountable" for any releases from the Montrose plant because the releases were not into the "environment" but rather into another "facility" (i.e., District No. 2). *Id.* at 31.

### C. Plaintiffs' Arguments

Plaintiffs argue that the express language of the statute requires that the limitation apply separately to *each* "release" and to each "incident involving release." Plaintiffs also point out that the DDT Defendants' argument requires one to ignore both the normal meaning of the word "incident" and the broad interpretation given to the term "facility" in the definition section of CERCLA and by the courts.

### COURT'S ORDER

Based on the foregoing, it is hereby ORDERED:

The Special Master's denial of the DDT Defendants' Request to Apply the $50 Million Cap on Damages is **UPHELD**.

### COURT'S ADDITIONAL ORDERS:

The Special Master is Requested and Directed to Reconsider Ruling 3 (Refusal to Impose Rule 11 Sanctions by Dismissing

First Amended Complaint); Ruling 5 (Refusal to Exclude Pre–1980 Damages); and Ruling 6 (Refusal to Apply $50 Million Damages Cap), in light of today's Hearing and the Written Stipulations as to the Issues to be Agreed upon and to be Presented to the Special Master by the Parties.